. Argued March 15, decided April 26, 1910.

## PALMER *v.* PORTLAND RY., LIGHT & POWER CO.

[108 Pac. 211.]

TRIAL—MOTION FOR NONSUIT—REVIEW OF EVIDENCE.

1. The court, on motion for nonsuit, must view the testimony in the light most favorable to plaintiff.

STREET RAILROADS—OPERATION—CARE REQUIRED.

2. More care is essential to the proper operation of street cars than is usually required on the part of steam railroads.

STREET RAILROADS—OPERATION—RECIPROCAL RIGHTS.

3. The rights of travelers on a street on which street cars are operated, and the right to operate street cars, are reciprocal; and the travelers and the car men must act with due regard for the rights of others, and the public may assume that in the operation of the cars municipal ordinances will be observed.

STREET RAILROADS—OPERATION—NEGLIGENCE—QUESTION FOR JURY.

4. Whether the moving of street cars at a greater speed than permitted by a municipal ordinance is negligence is for the jury.

NEGLIGENCE—"PROXIMATE CAUSE."

5. "Proximate cause" is defined generally as the cause which leads to or may naturally be expected to produce the result.

STREET RAILROADS—COLLISION—NEGLIGENCE—QUESTION FOR JURY.

6. Whether there was negligence in the operation of a street car which ran into a traveler and injured him *held,* under the evidence, for the jury.

STREET RAILROADS—COLLISION—CONTRIBUTORY NEGLIGENCE—QUESTION FOR JURY.

7. Whether a traveler, injured in a collision with a street car while attempting to cross the street in front of the car, was guilty of contributory negligence in failing to look for the approaching car immediately before attempting to cross the track *held,* under the evidence, for the jury.

STREET RAILROADS—INJURIES TO TRAVELER—CONTRIBUTORY NEGLIGENCE —BURDEN OF PROOF.

8. The burden of proving contributory negligence of a traveler, struck by a street car while attempting to cross the track in front of an approaching car, is on the street railroad.

NEGLIGENCE—PROXIMATE CAUSE—QUESTION FOR JURY.

9. Where the proximate cause of an injury is problematical, the case must be submitted to the jury.

STREET RAILROADS—INJURIES TO TRAVELER—NEGLIGENCE—EVIDENCE— CITY ORDINANCE.

10. In an action for injuries to a traveler in a collision with a street car running at an excessive rate of speed, the ordinance fixing the maximum speed and the evidence offered in connection therewith to show the speed limit in the city, are admissible.

From Marion:    GEORGE H. BURNETT, Judge.

Statement by MR. JUSTICE KING.

This is an action by Laura Palmer against the Portland Ry., Light & Power Co. for damages sustained by plaintiff by reason of injuries inflicted in a collision between an electric car, operated on defendant's street railway in the city of Salem, and a single buggy, drawn by one horse, in

which plaintiff was riding.   The evidence tends to show
that, just before the accident, plaintiff and her husband
drove down High street to the intersection with State
street, and then turned easterly up State street, with the
intention of turning south at Cottage street, a distance,
approximately, of 800 feet from High street.   When the
buggy turned east at High, plaintiff saw defendant's car
standing still, about 450 feet west.   The buggy was driven
at a speed of about nine miles an hour up State street,
parallel with the north rail of defendant's track, and
about four feet therefrom.   Plaintiff's husband was driv-
ing, but she was directing his movements and keeping
watch for the approach of street cars.   There is no evi-
dence showing at what moment, after plaintiff first saw
the car, it was put in motion, but she testified that, when
the buggy reached Church street, she again looked, and
noticed that the car was from a block and a quarter to a
block and three-quarters behind the buggy, or between
400 and 600 feet distant.   After passing, but near, the
center of the next block, she saw that the car was behind
them "about" three-quarters of a block, a distance of ap-
proximately 250 feet.   Proceeding from this point to the
intersection of Cottage and State streets, less than half
a block, she directed her husband to turn south on Cot-
tage street.   She did not at that moment look or listen for
the approaching car, nor was the speed of the horse
slackened, and when they turned to cross the track they
perceived the car within 40 feet of the buggy, running at a
great speed, probably 20 miles an hour, at which moment
the horse's front feet were on the car track.   The driver
attempted to swing his horse to the left to avoid the acci-
dent, but the car struck the rear of the buggy, shattering
it, and throwing plaintiff to the ground and injuring her.
The car, as the evidence tends to show, was a penitentiary
car, used for conveying convicts to and from their work,
and no bell was rung, nor any signal whatsoever given of

its approach. Plaintiff testified that she was familiar with the speed and manner in which street cars were usually operated in Salem, and there was other evidence tending to show that the speed attained by the car in question was much greater than usual, and about 20 miles an hour. Plaintiff offered in evidence the ordinance, granting the street railway franchise to defendant's grantor, which provides that cars should not be run at a greater speed than 10 miles an hour, but this evidence was rejected. It was shown that State street is 99 feet wide, that the car track is practically in the center of the street, and that there were no wagons or other vehicles in the vicinity when the accident occurred. At the conclusion of plaintiff's testimony, the court granted a nonsuit, and she appeals, assigning as error the sustaining of defendant's motion for nonsuit and exclusion of evidence showing defendant to have been operating under an ordinance, limiting the speed of cars within the corporate limits of the city of Salem to 10 miles an hour.        REVERSED.

For appellant there was a brief over the names of *Messrs. Carson & Brown,* with an oral argument by *Mr. John A. Carson.*

For respondent there was a brief over the names of *Mr. Franklin T. Griffith* and *Mr. George G. Bingham,* with an oral argument by *Mr. Griffith.*

MR. JUSTICE KING delivered the opinion of the court.

MR. CHIEF JUSTICE MOORE dissenting.

1. To test the sufficiency of the proof under a motion for nonsuit, the testimony must be viewed in the light most favorable to plaintiff. *Hunz* v. *O. R. & N. Co.,* 51 Or. 191, 205 (93 Pac. 141: 94 Pac. 504.)

2. Some of the witnesses testified to the effect that the car was running about 20 miles an hour. Plaintiff testified that, when opposite the court house corner, the car was not less than a block and a quarter, or a distance of

about 440 feet to their rear; that after driving to a point near the center of the next block, in front of the postoffice, she again looked, at which time the car was at least three-fourths of a block distant; that she supposed it was running at the regular rate of speed, the limit of which is fixed by ordinance at 10 miles an hour, and that after looking the last time the buggy was driven to the intersection of Cottage street, or about 150 feet, before attempting to cross the track. It is too well-settled to admit of serious discussion that more care is essential to the proper operation of street cars than is usually required on the part of steam railways.

3. The rights of travelers upon the streets, whether in vehicles or otherwise, are reciprocal; all must act with due regard for the rights of others. The public has the right to assume that at least the requirements of municipal ordinances will be observed.

4. The question as to whether the moving of cars at a greater speed than permitted by law, constitutes negligence, is for the jury. *Beck* v. *Vancouver Ry. Co.*, 25 Or. 32 (34 Pac. 753); *Wolf* v. *City Ry. Co.*, 45 Or. 457 (72 Pac. 329: 78 Pac. 668); *Donohoe* v. *Portland Ry. Co.*, 56 Or. 58 (107 Pac. 964).

5. It is held in *Donohoe* v. *Portland Ry. Co.* that "it must appear that, although the defendant was negligent, the injury was caused by the unlawful speed, without contributory negligence of the person complaining, which was the proximate cause of the injury." But, in this instance, it is manifest that had defendant's car not exceeded the reasonable rate of speed prescribed by ordinance, which plaintiff had a right to assume, no collision would have occurred. As stated in Buswell, Personal Injuries (2 ed.) § 97, quoted with approval in *Elliff* v. *O. R. & N. Co.*, 53 Or. 66, 76 (99 Pac. 76, 79):

"The proximate cause is to be defined generally as the cause which led to or might naturally be expected to produce the result."

6. Now applying this rule, let it be remembered that plaintiff had a right to travel upon the street, and near to, or even upon the track, and to cross the street at any suitable point, especially at a crossing, as attempted on this occasion, and defendant had a like right to be upon its tracks thereon; each being required to be reasonably prudent in the exercise of their respective privileges. But, as shown, there was ample evidence from which the jury could find that defendant was negligent; and, whether plaintiff was also reckless, and thereby contributed to and was the proximate cause of the collision, depends upon whether she used due diligence in watching the approaching car before attempting to cross the track, or looked in sufficient time to come within the usual prudential requirements.

7. After looking, and before attempting to cross the track, plaintiff traveled 150 feet; this distance, according to the effect of the testimony adduced in her behalf, was covered in 10 or 11 seconds. Had the car, during that space of time, not exceeded the maximum rate of speed of 10 miles an hour, it would have traveled approximately 160 feet. When plaintiff last looked the car had about 400 feet to run before it could overtake them; therefore, when they attempted to cross the street, they were entitled to assume that the car was about 240 feet to the rear, thus giving them about 15 seconds in which to cross the track before the possibility of a collision. Hence there was no real necessity to look again, unless it was incumbent upon them to take notice, or to presume that the defendant was violating the ordinance by running at a reckless speed. The evidence does not justify such an assumption, and that a person should so presume is never required. True, many persons, before attempting to cross the track under such circumstances, might have looked again, but whether a failure so to do, when the car could reasonably have been expected to be from 230 to 240 feet

distant, with at least 15 seconds in which to drive less than 20 feet (when at the rate they had been driving they could have covered 225 feet), is certainly a matter concerning which reasonable minds may differ, necessitating a submission thereof to the jury.

8. It also appears that had the car been under proper control, and not going at an unreasonable speed, it could have been stopped in time to prevent a collision; thus supplementing the plaintiff's proof, tending to establish as a question for the consideration of the jury that defendant's negligence was the primary cause of the accident. *Donohoe* v. *Portland Ry. Co.*, 56 Or. 58 (107 Pac. 964); *Kunz* v. *O. R & N. Co.*, 51 Or. 191, 205 (93 Pac. 141: 94 Pac. 504.) The burden of proving contributory negligence is on the defendant. *Gentskow* v. *Portland Ry. Co.*, 54 Or. 114, 120, 122 (102 Pac. 614.)

9. And, as held in *Elliff* v. *O. R & N. Co.*, 53 Or. 66 76 (99 Pac. 76), where the proximate cause of the injury is problematical, as certainly appears here, the case should be submitted to the jury. Or, as said by Mr. Justice LAMAR in *Grand Trunk Ry. Co.* v. *Ives*, 144 U. S. 408, 417 (12 Sup. Ct. 679, 682, 683: 36 L. Ed. 485):

"There is no fixed standard in the law by which a court is enabled to arbitrarily say in every case what conduct shall be considered reasonable and prudent, and what shall constitute ordinary care, under any and all circumstances. The terms 'ordinary care,' 'reasonable prudence,' and such like terms, as applied to the conduct and affairs of men, have a relative significance, and cannot be arbitrarily defined. What may be deemed ordinary care in one case, may, under different surroundings and circumstances, be gross negligence. The policy of the law has relegated the determination of such questions to the jury, under proper instructions from the court. It is their province to note the special circumstances and surroundings of each particular case, and then say whether the conduct of the parties in that case was such as would be expected of reasonable, prudent men, under a similar state of affairs. When a given state of facts is such that

reasonable men may fairly differ upon the question as to whether there was negligence or not, the determination of the matter is for the jury. It is only where the facts are such that all reasonable men must draw the same conclusion from them that the question of negligence is ever considered as one of law for the court."

To the same effect, see *Hedin* v. *Railway Co.*, 26 Or. 155, 161 (37 Pac. 540) ; *Hecker* v. *Oregon Railroad Co.*, 40 Or. 6 (66 Pac. 270) ; *Webb* v. *Heintz*, 52 Or. 444, 447 (97 Pac. 753.) See, also, *Doyle* v. *Southern Pacific Co.*, 56 Or. —— (108 Pac. 201), and authorities there collated on the subject. To affirm the judgment of the trial court would not only be at variance with the principles enunciated in the foregoing authorities, but manifestly inconsistent with the views announced and adopted in the following additional decisions by this court upon the subject: *Galvin* v. *Brown & McCabe*, 53 Or. 598, 608 (101 Pac. 671) ; *Crosby* v. *Portland Ry. Co.*, 53 Or. 496, 502 (100 Pac. 300: 101 Pac. 204) ; *Webb* v. *Heintz*, 52 Or. 444, 446 (97 Pac. 753) ; *Wolf* v. *City Ry. Co.*, 45 Or. 446, 457 (72 Pac. 329: 78 Pac. 668) ; *Geldard* v. *Marshall*, 43 Or. 438 (73 Pac. 330) ; *Shobert* v. *May*, 40 Or. 68 (66 Pac. 466: 55 L. R. A. 810: 91 Am. St. Rep. 453.)

10. The learned court below erred in excluding the ordinance and proof offered in connection therewith for the purpose of showing the speed limitation prescribed by ordinance within the city, and in sustaining the motion for nonsuit. The judgment will accordingly be reversed, and a new trial ordered.    REVERSED.

MR. CHIEF JUSTICE MOORE dissents.