## City of Covington v. Lovelace.

(Decided April 29, 1932.)

SAMUEL W. ADAMS and RALPH P. RICH for appellant.

BLAKELY & MURPHY for appellee.

OPINION OF THE COURT BY DRURY, COMMISSIONER—Affirming.

The city of Covington seeks to reverse a judgment for $3,000 recovered against it on Febraury 12, 1931, by Florence Lovelace for injuries sustained by her, on November 7, 1927, when she was walking southwardly upon the sidewalk on the west side of Athey avenue, and at or about No. 218 on said avenue, as a result of an abrupt depression and elevation of the sidewalk at that point, into and over which she stepped, stumbled, and fell. She fractured her left arm, and, as she says, lacerated and tore the muscles of her fingers, arm, and shoulders, permanently injuring them and inflicting upon her a severe mental and nervous shock, etc., by which she claims her nervous system was permanently destroyed and for which injuries she sought a judgment for $10,000 by her petition filed August 21, 1928. On November 13, 1925, the city answered, denying generally the plaintiff's petition and pleading her contributory negligence was the sole and only cause of her alleged injuries.

The court submitted to the jury the questions of the plaintiff's pain and suffering, the cause thereof, and that of her contributory negligence.

The city asks a reversal, because, as it says, the verdict is excessive, is the result of passion and prejudice, is not sustained by sufficient evidence, that the court erred in giving and refusing instructions, and further erred in not granting a new trial because of irregularities in impaneling the jury.

### The Defect in the Sidewalk.

This is a concrete sidewalk, and when it was constructed a tree was growing next to the curb. In order to save the tree a circular space around it was left unpaved. The tree has grown, and the roots have raised one slab of the pavement about an inch above the adjoining slab and have raised and broken another and adjoin-

ing slab of the pavement so that a piece about nine by thirty-six inches in size was broken out thereby, thus making a step-off or hole. The depth of this hole or step-off is variously estimated, the witnesses for the plaintiff say it is now about three or four inches, and that it was in that same condition in November, 1927, when Mrs. Lovelace was injured.

The witnesses for the defendant do not dispute that as to its condition at the time of the trial, but they say it was not more than one-half inch at the time of the accident. The city certainly had its attention called to this place when it was sued (almost three years before the trial), and why it did not have accurate measurements made then does not appear. Upon the motion of the city the jury was sent to view the place of the accident. By this motion the city put itself in a very awkward position to claim the condition was otherwise at the time of the accident.

## The City's Motion for a Peremptory.

At the close of the evidence for the plaintiff the city asked for a peremptory instruction, and at the close of all the evidence it renewed that motion. Each time its motion was overruled, and this it claims was error. It has cited the following cases in support of its position: City of Covington v. Belser, 137 Ky. 125, 123 S. W. 249; City of Louisville v. Uebelhor, 142 Ky. 151, 134 S. W. 152; City of Lexington v. Cooper, 148 Ky. 17, 145 S. W. 1127, 43 L. R. A. (N. S.) 1158; and Tudor v. City of Louisville, 172 Ky. 429, 189 S. W. 456. The accident in the Tudor case resulted from a slick place on an iron grating, and we hardly think that case applicable here. We discussed the first three in City of Dayton v. Lory, 169 Ky. 94, 183 S. W. 252, 254, and, after so doing, said:

> "Where the defect in the sidewalk is such that reasonable men might well differ as to whether a sidewalk with such an obstruction in it was reasonably safe for travel by persons exercising ordinary care for themselves, that it is a question for the jury and not for the court. City of Covington v. Visse, 158 Ky. 134, 164 S. W. 332."

On this point we cited the Lory case, with approval in City of Lebanon v. Graves, 178 Ky. 749, 199 S. W. 1064, L. R. A. 1918B, 1016. We regard the defects shown

in this case as bringing it within the rule in the Lory case, and the court did not err in submitting the question to the jury. See also, City of Ashland v. Boggs, 161 Ky. 728, 171 S. W. 461, Ann. Cas. 1916B, 1005, and authorities cited in that opinion, and City of Louisville v. Vaughn, 180 Ky. 681, 203 S. W. 546.

### Is the Verdict Excessive?

Witnesses testified that plaintiff had not been able to work since the accident; that she had been extremely nervous, and complains of her back and wrist all the time. "She can't even put her clothes on; she cannot dress herself, she has been so nervous she cannot sleep good at all and never has since she got hurt." She is a woman sixty years of age, was hale and hearty before the accident, but is now a physical and nervous wreck over three years after the accident. There is no way to measure pain and suffering with exactness. In Gnau v. Ackerman, 166 Ky. 258, 179 S. W. 217, 221, we said:

"Reasonable compensation for an injury like this it is not possible to determine with mathematical accuracy, or, indeed, with even reasonable accuracy. No rule has ever been or ever can be laid down by which the damages allowable in personal injury cases may be carefully measured or computed. The best that can be done under these circumstances is to leave what is fair and right to the judgment and discretion of the 12 men who compose the jury, and their judgment and discretion we are not authorized to, and will not, interfere with, unless it appears that their assessment was influenced by passion or prejudice or is so unreasonable as to appear at first blush entirely disproportionate to the injuries sustained."

Authorities on the subject of excessive damages are not conclusive. Every case must stand by itself, and the verdict of a properly instructed jury will not be disturbed unless the verdict is so apparently excessive that reasonable men would not differ about it.

No surgeon or physician testified regarding the condition of Mrs. Lovelace. If the city made any effort to obtain such evidence by having a physician or surgeon examine her the record does not disclose it, and under the evidence presented we are unable to say the verdict is excessive.

## Contributory Negligence.

The plaintiff says this of the occurrence of the accident:

> "Well, I went—just me and her were walking along and talking along—I never noticed the place until I fell in it; of course, I never noticed the place until I fell in it and I fell sprawling in the street and it hurt me."

This the city contends was such contributory negligence that the court should have directed a verdict for it, but the case of Merchants' Ice and Cold Storage Co. v. Bargholt, 129 Ky. 60, 110 S. W. 364, 33 Ky. Law Rep. 488, 16 Ann. Cas. 965, is complete answer to that contention. To same effect, see City of Louisville v. Vaughn, 180 Ky. 681, 203 S. W. 546, and City of Ashland v. Boggs, 161 Ky. 728, 171 S. W. 461, Ann. Cas. 1916B, 1005, and authorities cited in that opinion. The city says plaintiff aggravated her injuries by never returning to the surgeon again after he set her arm, and by herself removing the splints and bandages seven weeks after the injury, but there is not a line of evidence to that effect, and the city asked no instruction upon that subject.

## The Jury.

Counsel for the city says that on their voir dire examination he asked each of the prospective jurors if he were a taxpayer, and that each said he was. In its motion for a new trial the city stated that John D. Kidd, J. O. Mally, and J. Taubken were not taxpayers, and hence not qualified jurors. A juror does not have to be a taxpayer. See section 2253 Ky. Stats. The statute further provides:

> "The fact that a person not competent served on a jury shall not be cause for setting the verdict aside, nor shall exceptions be taken to any juror for such cause after the jury has been sworn."

In Trent v. C. & O. Ry. Co., 221 Ky. 622, 299 S. W. 556, 558, we said:

> "This section does not apply to the action of the court in improperly forming a jury in a civil cause. . . . Or to misconduct upon the part of a juror in

failing to answer questions truthfully on the voir dire, by which a party is misled.''

In this case the judge of the circuit court wrote an opinion overruling the motion for a new trial in which he said:

''The complaint that certain jurors did not correctly answer certain questions asked them, is disputed by the affidavit of the accused jurors. The question defendant's attorneys say they asked said jurors was 'were they tax-payers?' These attorneys and said jurors in their affidavits disagreed as to their respective answers to the said question. As to who is right as to the answer given I don't feel called upon to decide. As to whether or not a juror is a taxpayer is not what gives ground for a challenge to said juror. Said juror may have been a taxpayer and still subject to challenge. . . . Therefore, there is no proper establishment for the claim here that the juror was asked the required question. There is no claim here that either of said jurors was trying to mislead the attorney for the defendant.

''The jury is drawn a week before they are impaneled in a case and their names are put on record, and any one wanting to know whether any juror is on the last return of the assessor for this county can easily examine the record and see. I am not inclined to find that a juror has sworn falsely upon his examination and qualifications as a juror, unless the evidence is so strong upon that point, that no other conclusion can be reasonably reached.''

Before this trial the city could have made its investigation and have learned then everything it learned after the trial. Not being a taxpayer is not a ground for challenge for cause. Of course, a litigant has three peremptory challenges (section 2258 and 2267, Ky. Stats.) which he may exercise, but the city makes no claim its counsel intended to strike the names of prospective jurors who were not taxpayers, and, if it were making such claim, we would be very reluctant to consider it, as no one can know what a person's undeclared intention is, and to consider it would open the door for a defeated litigant to say it was his intention to strike the names of all users of tobacco, and that he asked the prospective jurors, and all denied the use of tobacco, whereas three

of them did use it, and that thereby he was misled, and hence a new trial should be granted, or perhaps to make some other claim equally trifling.

The judgment is affirmed.