## Commonwealth et al. v. Bowman.

(Decided Nov. 10, 1936.)

B. M. VINCENT, Attorney General, and A. E. FUNK, Assistant Attorney General, for appellants.

RICHARD PRIEST DIETZMAN and J. MOTT McDANIEL for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER— Affirming.

This suit for damages for personal injuries against the Commonwealth, and the State Highway Commission

was authorized by a resolution of the General Assembly. Chapter 55, Acts 1934. The preamble of the resolution goes so far as to declare that the State Highway Commission was negligent and that the appellee, Bowman, was exercising due care for his safety. It granted permission to him to bring suit in any "county having jurisdiction of the parties and subject matter," but limited his recovery to $6,000. The constitutionality of this resolution is questioned as being special legislation, and as placing a limitation upon the amount of recovery for personal injuries. Section 59 of the Kentucky Constitution prohibits the General Assembly from passing special laws concerning a number of subjects, including the changing of venue in civil cases. It further comprehensively provides that no special law shall be enacted where a general law can be made applicable. These inhibitions must be read in the light of the entire instrument and its qualifications. Section 231 of the Constitution provides:

> "The general assembly may, by law, direct in what manner and in what courts suits may be brought against the Commonwealth."

The contention of special legislation, along with the interpretation of the latter section of the Constitution, was determined adversely to the appellants in Commonwealth v. Haly, 106 Ky. 716, 51 S. W. 430, 21 Ky. Law Rep. 666. It is there pointed out that, although similar authority to enact a general law applicable to every controversy between the Commonwealth and its citizens has existed in the constitutions of the State from the beginning, the General Assembly has persistently declined to exercise that express right. It has hitherto kept in its own power the waiving of sovereign immunity in order to do justice to those whom it believed might have a just claim against the State. Referring to the adoption of a joint resolution authorizing named presons to institute suit on their claims, the court said:

> "While therefore the voluntary grant to these appellees by joint resolution is not an attempted compliance with the provisions of section 231, and is not therefore a law, within the meaning of that section, it is nevertheless an effective consent of the sovereign to subject itself to the jurisdiction

of the Franklin circuit court in the particular matter involved, unless, indeed, this consent is prohibited by section 59 of the constitution, which provides that the general assembly shall not pass local or special acts (paragraph 29) in any case 'when a general law can be made appicable.'

"If this prohibition applies to the state of case at hand, then, before individual wrongs may be righted or supposed just demands be put to legal test in the courts, the legislature must reverse the policy of a century, and enact a general law giving to all alleged creditors authority to sue the state.

"The only question, at last, is, how may the creditor obtain the consent of the state to be sued? The suggestion is not to be tolerated that he is without remedy. Surely he may petition his sovereign as in former times the subject might petition his prince. So the question is, shall the state enact a general law, through which 'unnumbered woes may come,' or, choosing the lesser evil, shall it continue to keep 'in its own power the granting of justice to its creditors?'

"We do not believe that this joint resolution, although confessedly special, in that it is for the sole benefit of certain individuals, can be regarded as covering a case where a general law can be made applicable, within the meaning and spirit of the constitution."

The cases of Commonwealth v. Lyon, 72 S. W. 323, 24 Ky. Law Rep. 1747, and Pennington's Adm'r v. Commonwealth, 242 Ky. 527, 46 S. W. (2d) 1079, are to the same effect.

No venue of the suit for damages was changed by the resolution under consideration. It provides that the "action may be brought in any county having jurisdiction of the parties and subject matter." The jurisdiction of the circuit court of Owsley County, where the accident occurred, is not questioned. Sections 72, 74, Civil Code of Practice. While the Franklin circuit court is established as the fiscal court of the State and the venue of certain suits against officers and others involving the fiscal affairs of the Commonwealth is lodged there by the general laws (sections 976, 4169, 4182, Kentucky Statutes), that court cannot be regarded as hav-

ing exclusive jurisdiction over suits of this nature under such a legislative consent as was given here.

Section 54 of the Constitution provides the General Assembly shall have no power to limit the amount to be recovered for injuries resulting in death, or for injuries to person or property. The resolution restricted recovery to $6,000. We need not consider the effect of such limitation in connection with the power of the Legislature under the terms of section 231 of the Constitution. The Commonwealth in cases of this sort, where the right to be sued is expressly given, is, generally speaking, extended the same rights and confined to the same limitations as an individual or corporate litigant. Pennington's Adm'r v. Commonwealth, supra. It is fundamental that no one will be heard in questioning the validity of a law unless the enforcement against him violates his constitutional rights. Strand Amusement Co. v. Commonwealth, 241 Ky. 48, 43 S. W. (2d) 321; Shaw v. Fox, 246 Ky. 342, 55 S. W. (2d) 11; Dorman v. Dell, 245 Ky. 34, 52 S. W. (2d) 892. Therefore, since the judgment recovered is only one-half the amount of the limitation, the Commonwealth nor its Highway Commission is in position to raise the question. They have not been hurt.

When employees of the Highway Commission quit work in placing a culvert in the road between Boonville and Beattyville one afternoon in August, 1932, they left open ditches three or four feet wide and about that deep on each side. A space eight or ten feet wide was left unexcavated in the middle of the road for the passage of vehicles. Several planks were placed upright in the ditches so as to extend above the surface, and two or three large concrete cylinders (which were to be used in making the culvert) were placed at the edges. No lights were put there. The attention of the foreman in charge of the workmen was directed to the danger of not having warning lights, and his response was either that he did not have any, or, if they should be put there, they would be stolen.

About 1 o'clock that night, when it was dark and very foggy, the appellee was driving from Boonville to Beattyville with his wife, as he testified, at 25 or 30 miles an hour on the right-hand side of the road, when the ditch and obstructions suddenly loomed up in front

of him. He swerved to his left, and, seeing the obstruction formed by the tiling, he again cut his car so that one or perhaps both front wheels went into the ditch. Losing control after putting on more power to pull his car out, he got through or across and ran 125 feet or more down the road and off an embankment, through a wire fence and into a field, where the car turned over. The appellee had gone that way during the afternoon and, of course, had seen the work being done there, but he states he had expected the situation to be fixed. It was a straight road for some distance as he approached the place of the accident.

Little or no attempt is made to excuse the dangerous condition created by the failure of the State's employees to place lights to warn travelers. The failure to suitably and sufficiently warn travelers of such dangers has been consistently held to be negligence, or at least to make a question for the jury. Grider v. Jefferson Realty Co. (Ky.) 116 S. W. 691; City of Ashland v. Williams, 203 Ky. 300, 262 S. W. 273; Cunliffe v. Chumbler, 226 Ky. 415, 11 S. W. (2d) 105; Taylor v. Westerfield, 233 Ky. 619, 26 S. W. (2d) 557, 69 A. L. R. 482; Gaines' Adm'x v. City of Bowling Green, 235 Ky. 800, 32 S. W. (2d) 348; Watkins' Adm'r v. City of Catlettsburg, 243 Ky. 197, 47 S. W. (2d) 1032. In essence, the argument of the appellant that a directed verdict should have been given against the plaintiff is that these facts of knowledge of the condition and the wild and disastrous course of the machine after he realized or saw the condition conclusively prove plaintiff's contributory negligence. It is argued that lights on the obstruction would have been unavailing.

These circumstances may indicate that the plaintiff was not exercising due care and prudence in proportion to the danger of driving in a heavy fog, with a limited vision, over a road which he knew was being worked on that afternoon. Straight Creek Fuel Co. v. Mullins, 189 Ky. 661, 225 S. W. 726. But he was confronted with an emergency. It must be remembered that one meeting a sudden danger not of his own creation, although bound to take active measures to save himself from impending harm, is not held by the law to the same degree of judgment and activity that he might be held were the conditions otherwise. A choice of evils or of dangerous courses may be all that is left to a man, and he is not

to be blamed if he chooses one and not the other to escape if he is in difficult and perilous circumstances and is compelled to decide hurriedly. Illinois Central Railway Co. v. Wilkins, 149 Ky. 35, 147 S. W. 759; Padgett v. Brangan, 228 Ky. 440, 15 S. W. (2d) 277; Creasy v. Bunch, 232 Ky. 56, 22 S. W. (2d) 446; Owen Motor Freight Lines v. Russell's Adm'r, 260 Ky. 795, 86 S. W. (2d) 708.

The plaintiff's testimony, and particularly his explanations, made clearcut issues of negligence and contributory negligence, which were submitted to the jury.

We do not regard the verdict as excessive. Before the accident Bowman was an able-bodied, strong man. Since then he has been unable to do the work he formerly could. He had five ribs broken, and his chest was crushed to some extent. He is still suffering from the injury to his kidney. He lost eighteen pounds in weight, and his blood pressure has gone below normal, while his heart beat is 108 instead of 72 to 74, which is normal for a man of his age. During the two years since the accident, he has been extremely weak and nervous, and spitting blood. He suffers pain in his chest on breathing and from some tenderness in his back. Three doctors testified for the plaintiff and pronounced him to be permanently injured as a result of the accident. Two physicians introduced by the defendants, who examined the plaintiff on the day of the trial, both pronounced him to be permanently injured, saying that he was disabled to the extent of 35 per cent. Under the circumstances, we regard the verdict as quite modest. Kelly & Shields v. Miller, 236 Ky. 698, 33 S. W. (2d) 662; Herald-Post Co. v. Spinner, 238 Ky. 436, 38 S. W. (2d) 245; City of Covington v. Lovelace, 243 Ky. 627, 49 S. W. (2d) 593; Hoagland v. Dolan, 259 Ky. 1, 81 S. W. (2d) 869.

The judgment is affirmed.